UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 08-82-JBC

GAYLE HUMPHREY,                                                                                          PLAINTIFF,

V.                               **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                            DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") (R. 6, 8).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.      **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II.    The ALJ's Determination**

The plaintiff initially alleged disability beginning on November 15, 2002, and later amended the date of alleged onset of disability to July 4, 2006, due to a

variety of physical impairments.[1]  AR 17.  At the time of the first alleged disability onset date, the plaintiff was a fifty-year-old male with a ninth-grade education.  AR 25.  As of July 4, 2006, Humphrey was fifty-four years old.  The plaintiff filed his claim for DIB on June 29, 2005.  AR 17.  The claim was denied initially on September 1, 2005, and again upon reconsideration on November 1, 2005.  *Id.*  After a hearing on October 2, 2007, Administrative Law Judge ("ALJ") Don C. Paris determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 15, 26.

At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since July 4, 2006, the amended alleged disability onset date.  AR 17.  At Step 2, the ALJ found that the plaintiff had severe impairments of osteoarthritis of the shoulders and lumbar spine and mild degenerative disc disease of the cervical spine.  AR 17.  The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  AR 19.

To assess the plaintiff's claim at Steps 4 and 5, the ALJ found that the plaintiff had a residual functional capacity ("RFC") to perform medium exertional work.  AR 20.  The ALJ determined that the plaintiff can lift or carry fifty pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight-hour day; sit six hours in an eight-hour day; frequently push/pull with his upper extremities;

---

[1]The plaintiff requested that the date be amended at his administrative hearing.

frequently climb stairs or ramps. AR 20. He further found that he can frequently balance, stoop, kneel, and crouch, but can only occasionally crawl or reach over his head and should avoid concentrated exposure to full-body vibration. *Id.* At Step 4, the ALJ found the plaintiff unable to perform any of his past relevant work. AR 24. Finally, at Step 5 the ALJ determined that due to the plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the plaintiff can perform. AR 25. The ALJ denied the plaintiff's claim for DIB on October 31, 2007, (AR 26), and the plaintiff appealed to the Appeals Council. The Appeals Council denied his request for review on March 26, 2008 (AR 6), and he commenced this action.

**III.    Legal Analysis**

The plaintiff objects to the ALJ's conclusion that he is not disabled. Specifically, he argues: (1) new evidence submitted to the Appeals Council makes remand appropriate; (2) the ALJ did not give appropriate weight to the opinion of the treating physician; and (3) the ALJ failed to follow regulations requiring special consideration of individuals over age fifty-five. The court will consider each argument in turn.

**A.    Remand for Consideration of New Evidence Not Appropriate**

The plaintiff first argues that the case must be remanded for the

4

consideration of new evidence.[2]

The plaintiff has now included in the record the opinion and treatment notes of Dr. Mathew Nicholls, an orthopedic specialist who treated the plaintiff. Dr. Nicholls opined that Humphrey had the RFC to do sedentary work.[3] The ALJ issued his decision on October 31, 2007 (AR 26), and Dr. Nicholls's report is dated December 28, 2007 (AR 249).

When a plaintiff presents the reviewing court with evidence that was not considered by the ALJ, the reviewing court may remand the case for further proceedings pursuant to Sentence Six of 42 U.S.C. § 405(g). According to Sentence Six, the court may remand a case to the Commissioner for further proceedings if the plaintiff has new, material evidence and shows good cause for failing to include it in the record before the ALJ. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

---

[2]The plaintiff frames this request as an argument that "the Appeals Council should have remanded the case for further consideration of new evidence regarding claimant's orthopedic impairments," but then goes on to apply the correct standard for when the district court should remand a case so that the ALJ can consider new evidence. To any extent the plaintiff is arguing for this court to review the Appeals Council's decision, this argument fails. That the Appeals Council had before it new evidence does not convert its procedural decision not to review the ALJ's decision into a final decision on the merits. *See Cline v. Sec'y of Health and Human Servs.*, 875 F.Supp. 435, 439 (N.D. Ohio 1995); *see also* 20 C.F.R. § 404.970(b). The decision before this court for review is the ALJ's decision, and the court will consider whether, in light of the new evidence, a Sentence Six remand is warranted.

[3]Specifically, Dr. Nicholls opined that Humphrey "is able to stand 4 hours of an 8 hour day, and is able to lift 10 pounds on a regular basis." AR 249. Dr. Nicholls made no further assessment of Humphrey's abilities.

5

Good cause exists for the lack of inclusion of these records in the record before the ALJ because they did not exist at the time of the administrative hearing. Humphrey sought treatment from Dr. Nicholls on November 16, 2007, several months after both the hearing and the issuance of the ALJ's decision.  AR 250. *See Wilson v. Sec'y of H.H.S.*, 733 F.2d 1181, 1182-83 (6th Cir. 1984) (overturning district court's finding of no good cause for failure to provide evidence to ALJ, where the medical records at issue were produced by the plaintiff's seeking treatment after the administrative hearing).  The evidence therefore also meets the definition of new evidence.  *See Hollon*, 447 F.3d at 484-85 (including in definition of "new evidence" evidence that was "not in existence . . . at the time of the administrative proceeding" (quoting *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir.1994))).  The court therefore will analyze whether this evidence is material.

"Material evidence is evidence that would likely change the Commissioner's decision." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.2007) (citing *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)). The plaintiff argues that this evidence is material because it contradicts the ALJ's assessment that Humphrey is able to perform medium exertional work.  This fact alone does not make the evidence material.

Dr. Nicholls did treat Humphrey and thus is a "treating physician."  While Dr. Nicholls assesses Humphrey as being restricted to lifting ten pounds and standing

for only four hours, the accompanying treatment notes do not support that assessment and so his assessment likely would be rejected by the ALJ. *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997) (although treating physician's opinion entitled to substantial deference, ALJ may reject it when it is not supported by medical findings).

Dr. Nicholls examined Humphrey's hips and right shoulder, joints where Humphrey indicated he was experiencing pain. AR 251. Dr. Nicholls states that Humphrey reported that he "can walk fine but doesn't tolerate sitting and lying on the hips." AR 251. Dr. Nicholls performed an MRI of the shoulder and x-rays of the hips. He observed that Humphrey's hips "have full passive and active range of motion." AR 250. He did find that the shoulder showed "evidence of some bursitis and possible partial tear at the site of the rotator cuff." AR 250. However, he also noted that he had "no intervention for the shoulder" and recommended steroid injections and therapy. AR 250. He further stated, "I think he has a good chance of improving his function with that alone." AR 250. He also indicated that an injection to the hips might improve his hip function. AR 250. Humphrey submitted no further records showing the outcome of this treatment.

Dr. Nicholls's own treatment notes therefore do not support his assessment of Humphrey's physical abilities. His assessment is also inconsistent with the treatment notes of Dr. Wright and the substantial evidence on the record that supports the ALJ's RFC assessment. *See infra*, section IIIB. The ALJ therefore

7

likely would reject Dr. Nicholls's assessment. Furthermore, even if he did not completely reject it, he is unlikely to afford it much weight. The evidence at issue – Dr. Nicholls's assessment of Humphrey's physical abilities and his accompanying treatment notes – is the product of one examination of Humphrey. *See* 20 C.F.R. § 404.1527(d)(2)(ii) (length of treatment relationship and frequency of examination relevant to weight placed on treating physician's opinion).

Because it is unlikely that Dr. Nicholls's assessment would convince the ALJ that plaintiff is disabled, this evidence is not material and remand is not appropriate.

**B.    ALJ Properly Considered Opinion of Treating Physician**

The plaintiff next contends that the ALJ did not give proper weight to the opinion of Humphrey's treating physician, Dr. A.C. Wright.[4] Dr. Wright opined that as a result of "multiple joint arthritis, including his right shoulder, both hips, right wrist, and left foot" as well as "cysts in the right wrist," Humphrey "is not able to perform any work, on a sustained, full time basis, that would require any significant amount of walking or standing or lifting." AR 240. Dr. Wright further stated that

---

[4]The plaintiff also argues that "the Appeals Council's rejection of the treating orthopedic specialist [sic] opinion was not supported by substantial evidence" (R. 6, p. 7) and that the ALJ erred by not affording appropriate weight to Dr. Nicholls's assessment of his abilities. These arguments are without merit. The ALJ did not have Dr. Nicholls's assessment to consider, and, as the court concluded in the previous section, remand for consideration of Dr. Nicholls's assessment is not necessary. *See supra* section IIIA. The Appeals Council's decision is not before this court for review. *See supra* note 2.

he believed Humphrey had been so restricted since November 15, 2002.[5]  AR 240.

The opinions of a treating physician are entitled to significant deference. *See, e.g., Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the support for the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion.  *Wilson*, 378 F.3d at 544.  An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings.  *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y of Health and Human Servs,* 25 F.3d 284, 287 (6th Cir. 1994) (when substantial medical evidence exists to the contrary, the ALJ is not bound by the treating physician's opinion); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

---

[5]The plaintiff does not argue that the ALJ erred by determining that the onset date was July 4, 2006, rather than November 15, 2002. Although Dr. Wright's assessment is dated July 16, 2007, all of his medical notes are from prior to July 4, 2006.  Neither party argues that this fact should have affected the ALJ's treatment of those records.

The ALJ found that Dr. Wright's assessment was "not supported by the objective medical evaluations or examinations and [was] inconsistent with the medical evidence of record." AR 23. The ALJ specifically referenced the Adult Medical Report for Social Security or SSI Disability Benefits ("Medical Report")(AR 241) that Dr. Wright completed as being inconsistent with his assessment. A review of the record supports the ALJ's conclusion.

The record includes Dr. Wright's treatment notes from November of 2001 through November of 2006. On November 23, 2001, Dr. Wright saw Humphrey four days after his fall that may have caused his shoulder injury. Although Dr. Wright notes that Humphrey suffered a seizure and eye injury as a result of the fall, the only notations relevant to his claimed disability are that he had "some generalized soreness." AR 246. On seven subsequent visits in 2004, Dr. Wright made no notations of any complaint or treatment for Humphrey's hips and shoulder. AR 243-46. On February 10, 2005, Dr. Wright noted the presence of the cyst on his right wrist and determined that "[a]t the present time we are going to leave it alone." AR 243. He then noted that Humphrey complained of pain in his right shoulder and opined that "[h]e may have a torn rotator cuff and his symptoms are with this and he is having hip pains, only present in the winter time." AR 243. On July 20, 2005, Humphrey again visited Dr. Wright "basically for refills on his medication" AR 242. Although Humphrey also complained of "discomfort in his shoulders, right hip, and left ankle." Dr. Wright further indicated that a recent

x-ray of the hip and shoulder "were negative for any significant problems." AR 242. He prescribed medication for his pain. The record does not include any further visits with Dr. Wright, so there is no indication that the pain medication did not successfully alleviate Humphrey's pain.

As noted by the ALJ, the Medical Report is inconsistent with Dr. Wright's assessment. In the Medical Report, Dr. Wright indicated that Humphrey was "normal" in all areas – including musculoskeletal – except psychiatric/psychological, where he noted Humphrey suffered from "chronic anxiety." AR 241. He recorded several medications Humphrey was taking and noted that Humphrey's response was "good." As far as diagnosis related to the claimed sources of disability, Dr. Wright wrote only "c/o pain shoulder & ankle" and that the prognosis for this problem was "good." These findings do not support Dr. Wright's assessment of disability but do support the ALJ's decision to reject that assessment.

Furthermore, other medical evidence in the record supports the ALJ's decision to reject Dr. Wright's assessment.[6] The findings of the consultative examining physician, Dr. John R. Johnson, are inconsistent with Dr. Wright's assessment.[7] Dr. Johnson found that Humphrey did have "indications of

---

[6] The ALJ's determination also is supported by the plaintiff's testimony that he is able to read; drive to observe wildlife, visit his farm, visit relatives, or go to the doctor; fix a sandwich or microwave a meal; and go out to dinner. AR 262-63, 281-84.

[7] Humphrey argues that Dr. Johnson's findings contradict the ALJ's RFC assessment because "Dr. Johnson did not complete a residual functional capacity assessment." R. 6, p.8. His findings are still medical evidence that the ALJ may

osteoarthritis" but that "[h]is extremity ranges of motion are pretty good except his shoulders are limited to 120 degrees of abduction bilaterally." AR 190. He also found that Humphrey's "movements are a little stiff" and that he had "some decrease in forward flexion in the lumbar spine." AR 190. Dr. Johnson concluded that "[b]ecause of his age and osteoarthritis, I do not think he is a candidate for heavy occupational exertion. He retains the ability to see, hear, speak, move about and manipulate objects." AR 191. He made no further findings of limitations.

The findings of the agency medical sources offer further support for the ALJ's assessment. Leonard Smith found that Humphrey had the physical capacity to lift fifty pounds occasionally, twenty-five pounds frequently, stand or walk six hours in an eight-hour day, and sit six hours in an eight-hour day. AR 216-17. This assessment contradicts Dr. Wright's assessment and is consistent with an RFC of medium work.[8] The second agency medical source, Dr. Humildad Anzures, affirmed Smith's assessment that Humphrey could perform medium exertional work.[9] AR 213.

---

consider, and furthermore, he did make an assessment of Humphrey's physical abilities. AR 191.

[8]Medium work is defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[9]However, Dr. Anzares's report does inexplicably diverge from Smith's report as to the specific restrictions she indicates in the section of the assessment form dealing with exertional limitations. Dr. Anzares checked "20 pounds" for the amount of weight Humphrey can occasionally lift but checked "25 pounds" for the amount of weight he can frequently lift. These conclusions are inconsistent with each other.

The court therefore concludes that the ALJ properly considered the opinion of treating physician Dr. Wright.

**C.     No Error in Failure to Apply Regulation with Specific Rule for Individuals Over Fifty-Five**

The plaintiff argues that the ALJ should have found him disabled by applying the guidelines found at 20 C.F.R. Pt. 220, App. 2, § 203.00.  This appendix to the regulations provides detailed guidelines, in the form of grids.  The guidelines of section 203.00 provide rules for the consideration of individuals with severe impairments who are limited to medium work.  Humphrey cites both section 203.00(b) and (c), which provide:

> (b) The functional capacity to perform medium work represents such substantial work capability at even the unskilled level that a finding of disabled is ordinarily not warranted in cases where a severely impaired individual retains the functional capacity to perform medium work. Even the adversity of advanced age (55 or over) and a work history of unskilled work may be offset by the substantial work capability represented by the functional capacity to perform medium work. However, an individual with a marginal education and long work experience (i.e., 35 years or more) limited to the performance of arduous unskilled labor, who is not working and is no

---

Dr. Anzares also indicated Humphrey could stand/walk for two hours in an 8-hour workday.  Both this restriction and the finding of his being able to lift only twenty pounds occasionally is inconsistent with Smith's report.  In item six of the section on exertional limitations, in response to a question asking for an explanation of her conclusions, Dr. Anzares offers no explanation for these discrepancies, stating simply, "No new MER provided at RECON.  Previous assessment dated 8/31/05 is affirmed as written."  AR 209.  The court assumes the first statement means she received no medical evidence of record for her reconsideration of Humphrey's condition that Smith did not have before him.  Regardless, she explicitly affirmed the explanation Smith offered for the exertional restrictions he found and gave no explanation for any discrepancies between the two reports.  She also explicitly affirmed his overall assessment of Humphrey's RFC.  AR 213.

13

longer able to perform this labor because of a severe impairment(s), may still be found disabled even though the individual is able to do medium work.

(c) However, the absence of any relevant work experience becomes a more significant adversity for individuals of advanced age (55 and over). Accordingly, this factor, in combination with a limited education or less, militates against making a vocational adjustment to even this substantial range of work and a finding of disabled is appropriate. Further, for individuals closely approaching retirement age (60-64) with a work history of unskilled work and with marginal education or less, a finding of disabled is appropriate.

Humphrey does not meet the requirements for a finding of disability under (b). Although he argues that his history as a farmer is a "history of arduous unskilled labor," the VE testified that farming was skilled labor. AR 288. Nor does Humphrey have only a "marginal" education. Humphrey completed the ninth grade. AR 263. The Social Security Administration "generally consider[s] that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). In contrast, the Administration defines a formal education anywhere from 7th grade to 11th grade level as a "limited education." *Id.* § 404.1564(b)(3).

Humphrey notes that the VE testified that there are no transferable skills from farming. AR 288. He maintains that all of the jobs named by the VE "would require significant vocational adjustment." R. 6, p. 9. The court assumes that by making these statements, Humphrey is arguing that section (c) applies to him. Although Humphrey was determined to have no transferable skills, his thirty-five years of work as a farmer were determined by the ALJ to constitute "past relevant work." AR 24. The language quoted by Humphrey states the overarching rules,

but the subparts of 203.00, laid out in a grid, flesh out the meaning of 203.00. Humphrey's situation is fully described by subpart 203.12, which provides that an individual of advanced age, with a limited education, with previous work history of skilled work but no transferable skills, should be found "not disabled." *See* 20 C.F.R. Pt. 220, App. 2, § 203.12.

Therefore, the ALJ did not err in his application of these rules.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 6) is **DENIED**.

Signed on  May 13, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

15